IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE PATRICK McBETH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 12-3583 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                                    May 13, 2013
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION.

This is an action brought pursuant to 42 U.S.C. §405(g) seeking judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

Plaintiff's claim for disability benefits ("DIB") under Title II of the Social Security Act.  Presently

before this court are the parties' pleadings, including Plaintiff's Motion For Summary

Judgment/Request For Review [Docket #6], Defendant's response thereto [Docket #8], and

Plaintiff's reply brief [Docket #12].

On December 12, 2012, Counsel presented oral argument.  For the reasons which follow,

I recommend that the relief sought by Plaintiff be denied and judgment be entered in favor of

Defendant, confirming the decision of the Commissioner.

## II. BACKGROUND AND PROCEDURAL HISTORY.

Mr. McBeth was born on August 18, 1968. He finished high school and completed one year of college. *See Administrative Record* [Docket #5] at 37-38. The Claimant has past relevant work as a custodian and lead custodian (semi-skilled and skilled positions of light to medium exertion). *Record* at 24.

Plaintiff filed a claim for disability insurance benefits on May 4, 2009, alleging an onset disability date of September 24, 2004. He argues he is unable to work because he suffers from multiple musculoskeletal impairments (primarily from his back), severe pain, depression and post traumatic stress resulting from his impairments. *Id.* at 17, 34-35. His claim was denied initially on July 31, 2009, and a request for a hearing was timely filed. A hearing was held on May 20, 2010 before ALJ Jennifer M. Lash in Philadelphia, Pennsylvania. Plaintiff was represented by his attorney, Jaclyn S. McCabe, Esquire, at the hearing. He presented testimony, as did an impartial vocational expert, Denise Cordez. *Id.* at 17, 32.

On June 18, 2010, ALJ Lash issued a decision denying Plaintiff's claim for benefits based upon a finding that he had not been disabled as that term is defined in the Social Security Act from September 24, 2004 through the date of her decision. *Id.* at 17[1]. The ALJ found that Plaintiff retained the Residual Functional Capacity [RFC] to perform light work with the following limitations:

> "[ . . . ] he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours and sit 6 hours in an eight-hour workday with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. He requires

---

1    In addition, the ALJ determined that Mr. McBeth had acquired sufficient quarters of coverage to remain insured through June 30, 2010. *Id.*

a sit/stand option every 60 minutes and would be limited to unskilled work with routine and repetitive tasks and no more than occasional interaction with the public, co-workers, or supervisors."

*Id.* at 21.

Mr. McBeth filed a timely Request for Review with the Appeals Council. On May 11, 2012, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the final decision of the Commissioner. *Record* at 1-3.

On June 25, 2012, Plaintiff filed an action in this Court, requesting review of the adverse decision. Respondent has answered the complaint, Plaintiff has filed a motion for summary judgment/request for review, Respondent has filed a response in opposition, and Plaintiff has filed a reply. This matter has been referred to me, by the Honorable Paul S. Diamond, for Report and Recommendation[2.]

## III. SOCIAL SECURITY DISABILITY LAW.

### A.  Disability Determinations.

The Social Security Act authorizes several classes of disability benefits, including DIB benefits. In order to qualify for DIB benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any `substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001)(quoting, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999));

---

2       Plaintiff's Counsel represents that he was subsequently found disabled at the initial level as of June of 2010, so this matter is for a closed period of disability. *See* Oral Argument [Docket #14]: N.T. 12/12/12 at 7.

42 U.S.C. § 423(d)(1)(1982).  A claimant can establish a disability in either of two ways:

(1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling

certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or

(2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. §404.1520. The steps are followed in order. If it is determined that the claimant is not disabled at a step in the evaluation process, the ALJ will not continue on to the next step.

At Step 1, the Commissioner must determine whether the claimant is engaging in substantial gainful activity. An individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. §404.1520(b). Step 2 involves evaluating severe impairments. 20 C.F.R. §404.1520(c). Step 3 requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. §404.1520(d). Step 4 states that if an individual is capable of performing past relevant work, he will not be found to be disabled. 20 C.F.R. §404.1520(e). Step 5 requires that if an individual cannot perform past relevant work, additional factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §404.1520(f). *See e.g.*, *Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence, and to determine credibility and the relative weights to be given to the evidence. *Plummer v. Apfel*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981).

**B.  Judicial Review of Disability Decisions**.

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision.  *Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.  *Id.*

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive.  This conclusiveness applies both to findings of fact and to inferences reasonably drawn from the evidence.  *See Fargnoli v. Massanari*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").


# IV.  THE ALJ'S DECISION.

The ALJ received medical evidence and heard testimony from Plaintiff and a vocational expert.  Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff is a younger individual with at least a high school education who is able to communicate in English.  He had not engaged in substantial gainful activity since his alleged onset date, and thus satisfied the requirements of Step 1 of the sequential evaluation.  *Record* at 19, 24-25.

At Step 2, the ALJ found that Plaintiff has the following severe impairments: "disorders of the back; osteoarthritis; hip bursitis; affective disorder; and anxiety disorder." *Id.* at 19.

At Step 3, the ALJ concluded that Plaintiff's impairments, considered singly and in combination, do not meet any of the Listings, specifically the Listings in section 1.00 (musculoskeletal) and section 12.00 (mental). *Record* at 19-20[3].

The ALJ reviewed the entire record and determined that Plaintiff has the Residual Functional Capacity to perform light work "except he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours and sit 6 hours in an eight-hour workday with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. He requires a sit/stand option every 60 minutes and would be limited to unskilled work with routine and repetitive tasks and no more than occasional interaction with the public, co-workers, or supervisors." *Id.* at 21.

At Step 4, the ALJ found that Plaintiff is able to perform his past relevant work as a custodian and lead custodian, which were semi-skilled and skilled positions of light to medium exertion. *Id.* at 24.

The ALJ proceeded to Step 5 of the sequential evaluation. Using the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 ["the Grids"] as a framework, the ALJ concluded that Plaintiff, a younger individual with at least a high school education, with his work experience and RFC, could perform unskilled light work as an packing

---

3       The ALJ found that Mr. McBeth's impairments did not meet the criteria for Listing 1.02(A) for lower extremities, 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety related disorders). *Record* at 20-21.

line worker, garnisher and lens matcher that exist in significant numbers in the national economy. A finding of "not disabled" was warranted. *Id.* at 25-26.

## V. DISCUSSION

Plaintiff argues that: (1) the ALJ failed to consider probative evidence and improperly evaluated Plaintiff's credibility; (2) the ALJ improperly discounted the opinions of his treating physicians and providers; and (3) the ALJ failed to perform a particularized inquiry of work related mental activities and failed to include limitations supported by the record in the hypothetical she posed to the Vocational Expert ["VE"]. *Plaintiff's Brief and Statement of Issues In Support of Request For Review/Summary Judgment* [Docket #6][4] at 2-18.

The Respondent argues, in opposition, that: (1) substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Act; (2) Plaintiff's subjective complaints are unsupported by the record; (3) the ALJ appropriately considered the medical opinion evidence; and (4) the ALJ's hypothetical question presented to the VE appropriately accounted for Plaintiff's mental limitations. *Defendant's Response To Request for Review* [Docket #11] at 4-26.

Plaintiff filed a reply brief in which he responds to specific arguments made by the Commissioner. *Plaintiff's Brief in Reply to Defendant's Brief in Response to Plaintiff's Request for Review* [Docket #12].[5]

---

4       Hereinafter "Plaintiff's Request For Review."

5       Hereinafter "Plaintiff's Reply Brief."

## A.  Substantial Evidence Supports The ALJ's Credibility Finding.

Plaintiff asserts that the ALJ improperly failed to give his complaints of pain great weight in view of medical evidence which supports the existence of pain.  *Plaintiff's Request for Review* at 4.  Plaintiff argues that the ALJ did not consider:

(1) "repeated findings of decreased range of motion by Dr. Fleischer [a treating physician], evidence of muscle spasm, and evidence of muscle weakness and decreased deep tendon reflexes."  *Plaintiff's Reply Brief* at 3.

(2) "the effectiveness or side effects of the medication Mr. McBeth had taken as required by SSR 96-7p."  *Plaintiff's Request for Review* at 4.

(3) "the impact of the combination of Mr. McBeth's mental impairments and his symptoms of pain."  *Id.* at 6.

(4) that "a claimant with a long work history is entitled to substantial credibility."  *Id.* at 7.

The Third Circuit has consistently held that credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are reserved for the ALJ.  These findings are entitled to great weight and should be upheld if supported by substantial evidence of record.  *See Malloy v. Comm'r of Soc. Sec.,* 306 Fed. Appx. 761, 765 (3d Cir. 2009).

> "[A]lthough '[t]estimony of subjective pain and inability to perform even light work is entitled to great weight,' *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979), an ALJ may nonetheless reject a claim of disabling pain when he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.' *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).  [ . . . ]
> Social Security Ruling 96-7p states that the ALJ may not reject a claimant's testimony with merely 'a single conclusory statement' or bare recitation of 'the factors that are described in the Regulations for evaluating symptoms.'  SSR 96-7p.  Rather, the decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight.' *Id.*"

*Harkins v. Comm'r of Soc. Sec.,* 399 Fed. Appx. 731, 735 (3d Cir. 2010).

In this case, the ALJ considered Plaintiff's testimony as to subjective complaints and functional limitations, and found:

> "[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment [RFC]."

*Record* at 22.

The ALJ acknowledged Plaintiff's reports of back pain and bilateral hip pain, and noted that his statements about the intensity, persistence, and functionally limiting effects of pain are not substantiated by objective medical evidence. Citing to 20 C.F.R. 404.1529(c) and 416.929(c), the ALJ listed the applicable factors to be considered in evaluating the extent to which Plaintiff's symptoms limit his ability to work. *Id.* The ALJ properly considered these factors, noting the following:

> (1)     The scope of Plaintiff's daily activities included putting in a load of laundry, taking the dog out, caring of his personal needs such as shaving, and making simple meals. Plaintiff testified that he uses a computer, uses e-mail on his phone and drives every other day. In a Functional Report completed by Plaintiff in September 2009, he reported that he walked the dog, prepared simple meals and moved the lawn, and had no problems with personal care such as showering. *Record* at 22.[6]

> (2)     Plaintiff had been treated conservatively including a course of acupuncture. Diagnostic testing of the lumbar spine showed spondylolisis with disc protrusion and disc

---

[6]      The Functional Report cited by the ALJ is found in the Record at 154-163. In this document, Plaintiff described a typical day as including doing "any necessary errand (ie. bank or groceries)" after lunch. *Record* at 154. Plaintiff reported doing laundry for 90 minutes daily and lawn mowing 10 to 15 minutes every week to 10 days. *Id.* at 156. He also stated that he went out daily, shopped for groceries for 15 to 20 minutes weekly, and attended church on a weekly basis participating in "the whole service." *Id.* at 157, 158.

The Functional Report filled out by Plaintiff is inconsistent with his testimony at May 20, 2010 hearing where Plaintiff testified that he does not do grocery shopping, and had not since early 2005. He explained that the inconsistent statement on his Functional Report was a mistake. *Record* at 46, 47-48. Plaintiff also testified that he stopped mowing the lawn two years ago, and "once in a while" ran errands throughout the day. He did not give an explanation for these inconsistencies. *Id.* at 46-48.

bulge.[7]  Plaintiff was treated with pain management in 2004 with nerve blocks for back pain.  Normal motor strength was reported in 2005 and surgery was not recommended.  Positive Waddell's signs were noted.  *Record* at 23.[8]

(3)     Between March 2005 and March 2009, Plaintiff did not seek any follow-up treatment.  A March 2009 MRI showed mild to moderate degenerative disc disease.[9]  While he complained of lower back pain at an April 2009 neurosurgery consult, it was reported that he was on no medications at that time.  *Id.*[10]

At the March 20, 2010 hearing, Plaintiff testified that he was not currently taking pain meds because he had tried them all and they were of no use to him, and that the last time he was on any pain medication was the fall of 2008.  According to Plaintiff, the only thing that helps his pain "a little bit" is ice.  *Record* at 41.

(4)     When asked why there was a gap in treatment from March 2005 through March 2009, Plaintiff testified that it was "[b]ecause there was essentially no acute condition, and he [Dr. Brigham] couldn't do anything for me then.  I waited until I had pain in my hips, which I did not initially have in 2005, and that's when I went back to Dr. Brigham."  *Id.* at 52.

The ALJ noted that when Plaintiff complained of right hip pain in September 2008, no motor or sensory deficits were noted, his gait was reported as normal, and a straight leg raise test was negative.[11]  A follow-up exam on September 12, 2008 resulted in a

---

7       The ALJ referred to an CT Scan done on January 21, 2005.  *Record* at 187.

8       Waddell's signs were noted by Dr. Levenberg of Surgical Orthopedic Associates on February 14, 2005.  *Record* at 215.  "Waddell's signs are special maneuvers used to evaluate persons when exam findings are inconsistent.  A positive Waddell's sign generally indicates a non-physiological etiology of pain."  *DeStefano v. Astrue*, CA No. 07-3750, 2009 WL 113744 at *6 fn. 20 (E.D. Pa. January 14, 2009).

Dr. Levenberg opined that surgical intervention would not provide any benefit.  It was his opinion that Plaintiff had not exhausted non-operative treatments.  He prescribed an oral anti-inflammatory and physical therapy, and recommended that "a Blackenship functional capacity evaluation to help define work ability as, whether he does or does not undergo surgical intervention, in all likelihood [Plaintiff] will require lighter duty occupation."  *Record* at 216.

At the May 20, 2010 hearing, Plaintiff testified that he did not have the recommended functional capacity evaluation, nor did he receive any additional treatment from Surgical Orthopedic Associates after February 2005.  *Record* at 52.

9       The ALJ referred to a March 11, 2009 MRI of the lumbar spine.  *Record* at 223.

10      The April 15, 2009 neurosurgical consult was done by Dr. Richter.  Upon examination, Dr. Richter determined that strength in both Plaintiff's upper and lower extremities was normal.  Straight leg raising was positive, bilaterally, at 90 degrees, a little bit more severe on the left.  Dr. Ritcher noted that Plaintiff was not in severe acute distress.  Dr. Ritcher diagnosed "intractable and bilateral hip pain sensation secondary to the posttraumatic degenerative disc disease and lumbar spine disease at L5/S1, left greater than L4/5 central."  Dr. Ritcher stated that he was hesitant to recommend further pain management and recommended that "it is probably time for this man to at least give consideration to an anterior and posterior combined spinal fusion."  *Record* at 274-276.

11      The ALJ referred to a September 9, 2008 ER record.  Plaintiff presented with pain in the right hip and upper leg.  He reported increasing pain in the right hip, progressively getting worse throughout the day.  Plaintiff

diagnosis of abductor tendinitis of the right hip. Treatment included a cortisone shot which gave him "good relief of the pain," and strengthening exercises. *Record* at 23.[12]

(5)     At a Psychological Consultative examination in July 2009, the report described Plaintiff as being in obvious physical discomfort, however, the physical discomfort did not affect his ability to concentrate or maintain a focused level of attention. *Record* at 24.[13]

(6)     Noting that Plaintiff had a strong work history, the ALJ found that Plaintiff's physical and mental impairments limit him as assessed in her RFC "supported by: the claimant's conservative treatment history; the claimant's testimony and records that revealed that he had not taken pain medication since the Fall of 2008 and that conservative measures, such as icing, makes the pain better; and, the medical evidence of record as a whole." *Record* at 24.

Plaintiff's focus on evidence which was not specifically mentioned by the ALJ as lending credibility to his allegations as to the scope and limiting effects of his pain does not negate the fact that the ALJ's credibility findings are supported by substantial evidence. The ALJ acknowledged Plaintiff's subjective complaints of pain, evaluated them in light of the medical evidence, and set forth a reasoned basis why Plaintiff's complaints are not fully credible.

**B.  The ALJ Properly Weighed the Medical Opinions.**

Plaintiff argues that the ALJ improperly: (1) gave little weight to the September 2009 Physical RFC assessment by Plaintiff's primary physician, Dr. Fleischer, and the May 4, 2010 RFC assessment by Dr. Whalen, another treating physician; (2) gave significant weight to the opinion of the July 28, 2009 State Agency Physician's Consultative Opinion; and (3) discounted the opinion of Plaintiff's therapist. *Plaintiff's Request for Review* at 8-14.

---

described the pain as cramping and constant, not associated with an inability to ambulate or bear weight. *Record* at 199. Both active and passive range of motion in the right hip caused pain. The left hip was unaffected. It was noted that Plaintiff appeared to be in moderate pain distress. Plaintiff was given a dose of Valium and Percocet, after which it was reported that he improved. He was given prescriptions for Valium and Percocet and discharged. *Id.* at 200-201.

12     The ALJ referred to a September 12, 2008 report of Dr. Brigham. *Record* at 228-229.

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). However, '[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.' *Plummer,* 186 F.3d at 429 (internal citation omitted)."

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The Social Security regulations require the ALJ to evaluate all medical opinions, weighing them using the following factors: (1) whether the medical source has examined the claimant; (2) whether the medical source had a treatment relationship with the claimant; (3) the degree of explanation and support, including medical signs and laboratory findings, for the opinion; (4) the consistency of the opinion with the record; (5) whether the medical source had a relevant specialization; and (6) other factors brought to the attention of the ALJ. 20 C.F.R. §404.1527(d). *See Salles, v. Cmm'r Soc. Sec.*, 229 Fed. Appx. 140, 148 (3d Cir. 2007)(all medical opinions are evaluated and weighed taking into account numerous factors including the opinion's supportability, consistency and specialization).

An ALJ's obligation to consider the medical evidence of record and provide adequate explanations to support his/her decision does **not** include a requirement to discuss **all** of the evidence. "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2004). When the ALJ does not reject evidence, or the evidence is neither probative nor conflicting, the ALJ is not required to further explain his/her findings. *Walker v. Comm'r Soc. Sec.*, 61 Fed. Appx. 787, 788-789 (3d Cir. 2003).

---

13    The Psych Consult was done on July 9, 2009 by Dr. Joseph Puleo. *Record* at 291-297.

Here, the ALJ reviewed the medical opinions of the various treating providers, including Dr. Fleischer (Plaintiff's primary care physician), Dr. Thomas Whalen (his rheumatologist), and Nathaniel S. Prentice (his therapist).

The ALJ considered the September 2009 Physical RFC completed by Dr. Fleischer and the May 2010 RFC completed by Dr. Whalen, and acknowledged that both treating physicians concluded that Plaintiff was capable of sitting and standing/walking each for less than 2 hours total in an eight hour workday. The ALJ gave these opinions little weight because they were inconsistent with the doctors' own progress notes and the record as a whole.

An examination of the record reveals that there are proper justifications for the ALJ's decision. Dr. Fleischer filled out a Physical Residue Functional Capacity Questionnaire on September 17, 2009. Dr. Fleischer reported seeing Plaintiff twice a year for office visits over an eight year period. In this form, Dr. Fleischer gave the following diagnosis: herniated lumbar disc, spinal stenosis and gave Plaintiff a "poor" prognosis. He reported that Plaintiff has constant, severe lower back pain which worsens with any activity. Objective signs and clinical findings were identified as "markedly diminished range of motion and strength [and] abnormal MRI's." *Record* at 320. Dr. Fleischer opined that Plaintiff's experience of pain was "constantly" severe enough to interfere with his attention and concentration. He concluded that Plaintiff could not walk a city block without rest or severe pain, could continuously sit for one hour and fifteen minutes and stand for one hour and five minutes, only doing either for a total of less than 2 hours in an 8 hour workday. *Id.* at 321. According to Dr. Fleischer, Plaintiff would have to take unscheduled breaks every hour, resting for half an hour before returning to work, and possibly needing "to spend some of this time in a recliner or lying on the floor." It was Dr. Fleischer's

opinion that because of Plaintiff's impairments, "all [days] will be 'bad days'," and Plaintiff

would likely be absent from work more than four times a month.  *Id.* at 323.

As the ALJ concluded, this RFC assessment was inconsistent with Dr. Fleischer's own

progress notes in which he noted that Plaintiff's pain was a bit better after the third epidural

(January 26, 2005); he experienced some relief with Percoset and Valium (September 9, 2008);

and Plaintiff's hip pain was "slowly resolving" (February 25, 2009).  *Record* at 240, 245.

It is also inconsistent with findings by specialists to whom Dr. Fleischer sent Plaintiff

including:

> (1) An October 18, 2004 evaluation at the Crozer Interventional Pain Management
> Center in which it was noted that Plaintiff did not appear to be in acute distress,
> and upon examination, had a good range of motion and motor strength of 5/5 in
> both the upper and lower extremities.  *Record* at 258.
> (2) A December 28, 2004 report from the Crozer Interventional Pain Management
> Center in which it was noted that while Plaintiff did not have any relief after the
> epidurals, he reported that his pain was relieved by an ice pack.  *Record* at 251.
> (3) A January 4, 2005 evaluation by Dr. Stanley in which he reports "good strength in
> the upper and lower extremities."  *Record* at 253.
> (4) A February 14, 2005 evaluation by Dr. Levenberg in which he reported that
> Plaintiff rated his pain from 5 to 8 on a scale of 1-10.  Upon examination, motor
> strength was 5/5.  *Record* at 248.
> (5) A September 12, 2008 evaluation by Dr. Brigham in which he noted that Plaintiff
> had pain with resisted abduction of his hip but range of motion of his hip was
> otherwise normal passively.  *Record* at 242.

Dr. Whalen's Physical Residual Function Capacity Questionnaire Form was dated May 4,

2010.  He noted that he had seen Plaintiff for two visits – on April 10, 2010 and May 3, 2010.  In

this form, Dr. Fleischer gave the following diagnosis: multifocal lower back pain with

herniations and [unintelligible], and gave Plaintiff a "poor" prognosis.  He reported that Plaintiff

had lower back pain going down both legs.  Objective signs and clinical findings were identified

as decreased lower spine range of motion, pain and spasm.  *Record* at 372.  Dr. Fleischer opined

that Plaintiff's experience of pain was "frequently" severe enough to interfere with his attention and concentration.  He concluded that Plaintiff could not walk a city block without rest or severe pain, could continuously sit for fifteen minutes and stand for ten minutes, only doing either for a total of less than 2 hours in an 8 hour workday.  *Id.* at 321.  According to Dr. Fleischer, Plaintiff would have to take unscheduled breaks every hour, resting up to half an hour before returning to work.  Dr. Whalen also found significant limitations in Plaintiff's ability to do repetitive reaching, handling or fingering.   It was Dr. Fleischer's opinion that Plaintiff's impairments would produce "good days" and "bad days, and Plaintiff would likely be absent from work more than four times a month.  *Id.* at 374-375.

 As the ALJ determined this RFC is inconsistent with Dr. Whalen's progress notes.  At his initial examination on April 5, 2010 and at the May 3, 2010 follow-up visit, Dr. Whalen noted that Plaintiff estimated his pain was 8 out of 10, made worse with increased activities of daily living and made better with rest.  Plaintiff's pain was treated with Percocet, Vicoden, and Ultram which Plaintiff reported were "no good," however, it was noted that "[t]he medication program resulted in some improvement." *Record* at 367, 371.  It was noted that Plaintiff exercises regularly – three or four times a week.  *Id.* at 369.

Both of these RFC's were inconsistent with substantial evidence in the record, as discussed above.  In addition, the RFC's were inconsistent with the September 9, 2008 ER notes which reported "no lumbar tenderness," "no back pain," normal range of motion in the upper and lower extremities, and pain in the right hip which improved with pain meds.  *Record* at 199-201.

The ALJ gave the July 28, 2009 Physical RFC assessment done by the State Agency Physician significant weight, however, she included additional limitations to account for further restrictions in Plaintiff's exertional abilities and a need for a sit/stand option. *Record* at 23.

The ALJ also properly accounted for Plaintiff's mental impairments in evaluating his RFC. She noted that Plaintiff began receiving mental health treatment in October 2009, and was diagnosed, on intake, with major depression. He was assessed with a GAF score ranging from 50 to 60. *Id.*[14]

Plaintiff underwent a psychological examination on July 9, 2009, done by Dr. Joseph S. Puleo. The ALJ noted that this assessment "revealed normal results with no more than slight limitations." *Record* at 24. The report described Plaintiff as being in obvious physical discomfort, however, the physical discomfort did not adversely affect his ability to maintain a focused level of attention. The ALJ gave Dr. Puleo's report great weight because it was an examining medical source and was supported by the treatment of evidence. *Id.* at 24.[15]

Dr. Puleo used selective items from the verbal scale of the WAIS-III to assess Plaintiff's intellectual abilities. He opinioned:

> "Overall, Mr. McBeth reveals himself as having an Average to High Average level of verbal intelligence. He reveals a fully intact capacity for exercising control over his emotions. His potentials for insight and for practical-minded reasoning/decision-making are demonstrated at a fair level. His obvious physical discomfort did not appear to adversely affect his ability to demonstrate

---

[14]      An intake interview was done by Nathaniel S. Prentice, MSW, LCSW, of Psych Choices of the Delaware Valley on October 22, 2009. *Record* at 324-328. Mr. Prentice listed Plaintiff's highest GAF score as 60, and his current GAF as 50. *Id.* at 327.

[15]      Dr. Puleo further noted that Plaintiff "ambulates with a noticeable level of physical discomfort and he needed to reposition himself frequently while seated during this evaluation. Toward the end of the evaluation, he needed to stand because of his rather apparent physical discomfort. However, he did not bring any undue focus of attention to his physical problems." *Record* at 291.

his intelligence to the fullest; ie, his ability to concentrate and to maintain a
focused level of attention appeared to be fully intact."

*Record* at 293.  Dr. Puleo diagnosed Plaintiff as having anxiety disorder, depressive disorder, and

pain disorder, and found that Plaintiff's mental impairments did not affect his ability to

understand, remember and carry out both simple and detailed instructions; nor did they affect his

ability to respond appropriately to supervision, co-workers and work pressures in a work setting.

Dr. Puleo found that Plaintiff's impairments had a slight affect on his ability to interact

appropriately with the public.  *Record* at 293-294.

On April 8, 2010, Plaintiff's therapist, Mr. Prentice, completed a Medical Source

Statement.  In this form, Mr. Prentice reported Plaintiff's current GAF, as well as his highest

GAF over the past year, as 50.  *Record* at 357.  It was Mr. Prentice's opinion that Plaintiff "is

unable to work due to back pain, resulting depression, and difficulty with crowds."  Mr. Prentice

noted that medication and therapy were "making some mood improvements, but still insufficient

for being able to work."  *Id.* at 358.  Plaintiff's prognosis was listed as "Fair.  His back issues and

trauma diagnosis are significant.  I do not expect him to return to work."  Mr. Prentice opined

that Plaintiff would have difficulty working at a regular job on a sustained basis "[c]hiefly due to

back pain.  His back pain keeps him from being in one position for longer than 20 mins.

Depression and PTSD will cause him to isolate and have difficulty with crowds."  *Id.* at 359.  Mr.

Prentice found moderate restrictions on activities of daily living, extreme difficulties in

maintaining social functioning, frequent deficiencies in concentration, pace and persistence, and

repeated (three or more) episodes of deterioration or decompensation in work or work-like

settings.  *Id.* at 360.

The ALJ gave this Medical Source Statement little weight because it was not completed by a doctor and was not supported by the progress notes or the GAF scores of record ranging from 50-60. *Record* at 24.

When making a disability decision, a distinction is made between "acceptable medical sources," and other health care providers who are not acceptable medical sources.

Under SSR 06-03p, a licensed clinical social worker is defined as an "other source." Information from "other sources" cannot establish the existence of a medically determinable impairment. However, information from other sources may provide insight into the severity of the plaintiff's impairments and how it affects the plaintiff's ability to function. Factors to apply in evaluating opinions from other sources include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains his/her opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment; and (6) any other factors that tend to support or refute the opinion. *Social Security Ruling 06-03p.*

In this case, the ALJ properly noted that Mr. Prentice was not an acceptable medical source and discounted his opinion because it was inconsistent with his own progress notes and the record. Mr. Prentice saw Plaintiff once a week from October 13, 2009 through April 8, 2010. On intake, Mr. Prentice noted that Dr. Fleischer had referred Plaintiff for therapy and medication management. At that time, Mr. Prentice reported that Plaintiff's memory, concentration, and attention were all normal. *Record* at 324. Mr. Prentice noted that Plaintiff was currently filing for SSD, and that he had been denied twice. *Id.* Mr. Prentice diagnosed major depression,

recurrent, moderate.  He listed Plaintiff's current GAF as 50 and highest GAF as 60.  *Record* at

327.  The stated treatment plan included cognitive therapy, individual therapy, possible couples

therapy if indicated, and medication management.  Plaintiff was "advised to consider going back

to the pain clinic, advised to call Voc Rehab to find out what services they may be able to offer,

pending support of his lawyer."  *Id.* at 327-328.

Mr. Prentice's progress notes show that: on November 5, 2009, Plaintiff stated that the

cognitive therapy was helpful; on November 19, 2009, Plaintiff reported a slight lifting of his

depression and it was noted that he had been taught meditation with good results; on December

3, 2009, Plaintiff reported that he did meditation with good results, that he was feeling better and

was less stressed; on January 7, 2010, Plaintiff reported that communication with his wife was

improving and his depression was lifting more, his symptom improvement was described as

"good" and he was able to use skills to decrease his depression; on January 21, 2010, his

symptom improvement was "good" with decreased depression secondary to increased

communication; on February 18, 2010, "good" symptom improvement was noted with

communication increasing; on March 4, 2010, Plaintiff was "doing well, doing activities together

[with wife];" on March 18, 2010, while Plaintiff reported increased isolation secondary to

increased depression, it was noted that he "recently received a ptsd-triggering letter from

mother;" on March 35, 2010, Plaintiff had "good" symptom improvement, he and his wife

wanted to go on a date and they were encouraged to go to the Art Museum for a date; on April 6,

2010, while they were unable to go on their date because Plaintiff's wife was ill, Plaintiff was

"doing well," "sleeps 2 ½ to 3 hours/night.  Easy awakening."  Mr. Prentice noted "having issues

with crowds – too much to keep an eye on," however, he asked Plaintiff to plan vacation with his

wife; on April 8, 2010, Plaintiff reported "doing better," going on a date with his wife and going away for a weekend. *Record* at 324-356.

While he was seeing Mr. Prentice, Plaintiff completed two assessments describing how he felt over the past week. In the first, dated January 7, 2010, Plaintiff rated his general sense of well-being, and his personal well-being, as 4 out of 10 explaining that he and his wife communicated more now but he still had work to do. *Record* at 343. On January 21, 2010, he rated his overall sense of well-being at 5 because he was using the techniques he was taught in therapy, and his personal well-being at 6 because he was feeling a lot better. *Record* at 346.

The ALJ properly reviewed the medical opinions and there is substantial evidence for theweight she assigned these opinions.

### C. The ALJ's RFC and Hypothetical Appropriately Accounted for Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ erred in failing to specify work-related mental activities such as the ability to understand, carry out and remember instructions, use judgment in work-related decisions or deal with changes in a routine work setting, and that the ALJ's hypothetical to the VE was not sufficient to encompass all of the serious mental impairments the ALJ believed Plaintiff to exhibit. Specifically, Plaintiff asserts that the ALJ's limitation to unskilled work with routine repetitive tasks fails to take into account the moderate limitations in concentration, persistence and pace that she found to be credible at Step 3 of the sequential analysis. *Plaintiff's Request for Review* at 15, 17.

In this case, the ALJ determined that Plaintiff has severe mental impairments including affective disorder and anxiety disorder which resulted in mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, pace

and persistence, and no episodes of decompensation. *Record* at 21. She found that Plaintiff's mental impairments restricted him to unskilled work and limited social interaction. *Id.* at 24. Consistent with the evidence cited in the discussion above, there is substantial evidence to adequately support the mental limitations in ALJ's RFC.

Further, the hypothetical posed to the VE, which limited Plaintiff to unskilled work, with routine repetitive tasks and no more than occasional interaction with the public, co-workers and supervisors[16], adequately reflected all of Plaintiff's impairments that had support in the record. The Third Circuit has held that moderate limitations in the ability to maintain concentration, persistence and pace are adequately addressed in a hypothetical limiting the plaintiff to simple, routine tasks. *See McDonald v. Astrue,* 293 Fed.Appx. 941, 946 (3d Cir. 2008)(in line with her finding that plaintiff only had moderate limitations with his ability to maintain concentration, persistence, and pace, the ALJ's hypothetical limiting him to simple, routine tasks was adequate[17]; and *Menkes v. Astrue*, 262 Fed.Appx. 410, (3d Cir.), *cert. denied,* 555 U.S. 1055 (2008)(ALJ properly accounted for moderate limitations in concentration, persistence and pace in her hypothetical question by restricting the type of work to simple routine tasks).

Because I find the ALJ's denial of benefits is supported by substantial evidence, I make the following recommendation.

---

16      *Record* at 54.
17      The Third Circuit distinguished *Ramirez,* 372 F.3d 546 (3d Cir. 2004) based on the difference between "often" suffering from deficiencies in concentration, persistence and pace, and being

**RECOMMENDATION**

It is recommended that the relief sought in Plaintiff's Motion For Request For Review be DENIED, and that judgment be entered in favor of Defendant, affirming the decision of the Commissioner of Social Security.

_S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By E-mail:
Hon. Paul S. Diamond
Meyer Silver, Esq.                    msilver@silver2law.com
Andrew C. Lynch, Esq.                 andrew.lynch@ssa.gov
Roxanne Andrews, Esq.                 roxanne.andrews@ssa.gov

---

"moderately" limited in these areas. *McDonald*, 293 Fed.Appx. at 947 n. 10.